Filed 10/31/14  P. v. Carmony CA6

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID LOUIS CARMONY,<br><br>Defendant and Appellant. | H039980<br>(Santa Clara County<br>Super. Ct. No. C1077394) |

Defendant appeals a judgment arising out of a residential burglary and other property crimes.  We will affirm it.

### PROCEDURAL BACKGROUND

An information charged defendant David Louis Carmony with the first degree burglary of the house of Michael and Kristin Savini on or about May 21, 2010.  (Pen. Code, §§ 459, 460, subd. (a).)[1]  It also charged three counts of receiving stolen property on or about that date.  (§ 496, subd. (a).)  It alleged three prior convictions under the

---

[1] All statutory references are to the Penal Code.

"Three Strikes" law (§§ 667, subds. (b)-(i)), 1170.12), two prior serious felony convictions (§ 667, subd. (a)), and service of two prison terms (§ 667.5, subd. (b)).

Defendant was tried to a jury, which found him guilty on all counts. The trial court found the prior conviction allegations to be true. It sentenced defendant, as a Three Strikes law offender, to a term of 25 years to life in state prison consecutive to 16 years 8 months therein.

## FACTS

On the morning of May 21, 2010, the Savinis heard noises downstairs and found defendant rummaging through Ms. Savini's purse in the kitchen. Defendant fled and Mr. Savini tackled him outside. Police arrived and apprehended him. Six $20 bills were found in his front pocket, money that was separate from his wallet, which police found in another pocket. The Savinis' daughter discovered that six $20 bills were missing from a wallet she had left in a car parked in the driveway

Further police investigation discovered that defendant possessed Apple brand electronic devices bearing identifications of Nolan Johnson, Barbara Carman, Alex Buooher, Joan Rizutto, Heather McKenzie, and one "Matt," last name unknown. Johnson and Carman testified that they had discovered their devices to be missing from their cars.

## DISCUSSION

### I. Claims of Prosecutorial Misconduct

Defendant claims his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and under state law were violated by instances of prosecutorial misconduct.

The law of prosecutorial misconduct, in the face of a claim of misconduct under the federal Constitution or state law, is well-settled. " ' "When a prosecutor's intemperate behavior is sufficiently egregious that it infects the trial with such a degree of unfairness as to render the subsequent conviction a denial of due process, the federal

2

Constitution is violated." ' [Citations.]  ' "Prosecutorial misconduct that falls short of rendering the trial fundamentally unfair may still constitute misconduct under state law if it involves the use of deceptive or reprehensible methods to persuade the trial court or the jury." [Citation.]' " (*People v. Shazier* (2014) 60 Cal.4th 109, 127.)

As for a defendant's entitlement to relief if prosecutorial misconduct has occurred, we apply the following legal standards:  With regard to due process, we will not speak of prejudice; if there is a due process violation, prejudice is a part of the violation.**2**  With regard to state law, the *Watson* standard of prejudice (*People v. Watson* (1956) 46 Cal.2d 818, 836) applies:  "Misconduct that does not constitute a federal constitutional violation warrants reversal only if it is reasonably probable the trial outcome was affected." (*People v. Shazier*, *supra*, 60 Cal.4th at p. 127.)

---

**2** On this point, the United States Supreme Court has undertaken different approaches.  One view is that either there is or is not a due process violation, such a violation being generally understood, with regard to trial errors, to be a defect that rendered the trial fundamentally unfair (see *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790).  Thus, if there is a due process violation, " '[i]t is unnecessary to add a separate layer of harmless-error analysis . . . .' " (*Kyles v. Whitley* (1995) 514 U.S. 419, 436, fn. 9.)  "[O]nce a reviewing court applying [a review for materiality] has found constitutional error there is no need for further harmless-error review." (*Id*. at p. 435.) Elsewhere, however, the high court has intertwined the consideration of prejudice and due process violations.  "[I]f Banks succeeds in demonstrating 'cause and prejudice,' he will at the same time succeed in establishing the elements of his . . . due process claim." (*Banks v. Dretke* (2004) 540 U.S. 668, 691.)  Still elsewhere, the court has implied that an inquiry into both a due process violation and prejudice is valid appellate procedure. (*Bradshaw v. Stumpf* (2005) 545 U.S. 175, 187 ["we therefore express no opinion on whether the prosecutor's actions amounted to a due process violation, or whether any such violation would have been prejudicial"].)  The applicable standard may depend on the type of due process claim; for example, the due process claim addressed in *Kyles* contains a materiality component and so prejudice analysis may be superfluous.

3

As we discuss below in subpart A, the prosecutor committed an instance of misconduct under our Supreme Court's interpretation of *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). We conclude, however, that, unfortunate though the occurrence was, the misconduct did not give rise to a due process violation or prejudice under state law. Another claim, discussed below in subpart B, is without merit.

### A.  Claim of Shifting the Burden of Proof to Defendant

At closing argument, defense counsel noted that Kristin Savini had not testified for the prosecution. This circumstance, she argued, left a critical gap in the state's evidence of burglary. The prosecutor argued in rebuttal that the jury was not permitted to speculate on why Ms. Savini did not testify. He then gilded the proverbial lily by saying, "There is [*sic*] still plenty of other strands that you can consider to tie the defendant to burglary. In fact, one thing that was glaringly missing from argument, counsel did not offer a reasonable explanation of innocence." Defendant objected that the prosecutor was "[s]hifting the burden" to him to prove his innocence, which is, of course, anathema to our justice system. The trial court overruled the objection.

The prosecutor continued in the same vein. "You didn't even hear the defense offer a reasonable explanation of innocence. They simply argued—" and here defense counsel cut the prosecutor off and objected on the same ground. The trial court again overruled the objection.

The trial court explained to the jury that the prosecutor was talking about circumstantial evidence: "The . . . language of reasonable interpretation of the evidence

4

in the circumstantial evidence instruction is being argued and it's . . . proper so I'm going to allow it."**3**

The prosecutor resumed his argument, saying, "There is no other reason he is going into that house at 4:45 in the morning."

The prosecutor's remarks about innocence, made in the heat of closing arguments, constituted *Griffin* error.  (*Griffin*, *supra*, 380 U.S. at p. 615.)

*Griffin* holds that "error is committed whenever the prosecutor or the court comments upon defendant's failure to testify."  (*People v. Vargas* (1973) 9 Cal.3d 470, 475.)  Defendant did not testify, just as Ms. Savini did not, and under *Griffin* "it is error for a prosecutor to state that certain evidence is uncontradicted or unrefuted when that evidence could not be contradicted or refuted by anyone other than the defendant testifying on his or her own behalf."  (*People v. Hughes* (2002) 27 Cal.4th 287, 371 (*Hughes*); accord, *People v. Bradford* (1997) 15 Cal.4th 1229, 1339 (*Bradford*).)**4**

---

**3**  The trial court was referring to CALCRIM No. 225.  In pertinent part, it instructed the jury that "before you may rely on circumstantial evidence to conclude that the defendant had the required intent or mental state, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant had the required intent or mental state.  If you can draw two or more reasonable conclusions from the circumstantial evidence, and one of those reasonable conclusions supports a finding that the defendant did have the required intent or mental state and another reasonable conclusion supports a finding that the defendant did not, you must conclude that the required intent or mental state was not proved by the circumstantial evidence.  However, when considering circumstantial evidence, you must accept only reasonable conclusions and reject any that are unreasonable."

**4**  The foregoing two decisions illustrate the point that *Griffin* applies both to direct and indirect prosecutorial comments on a defendant's failure to testify on his or her own behalf.  (*People v. Mincey* (1992) 2 Cal.4th 408, 446.)

In a post-argument discussion with the trial court and defense counsel, the prosecutor noted that he did not expressly mention defendant's silence; he mentioned defense counsel's arguments. That explanation, along with the trial court's view that the remark was tied to the instruction on circumstantial evidence, seemed to satisfy the court.

The prosecutor's explanation attempted to invoke the rule that "comments by the prosecution during closing argument noting the absence of evidence contradicting what was produced by the prosecution . . . and the failure of the defense to introduce material evidence . . . cannot fairly be interpreted as referring to defendant's failure to testify." (*Bradford*, *supra*, 15 Cal.4th at p. 1339.)

The problem, though, is that the defense strategy was to admit that defendant was in the Savini house unlawfully, as a trespasser, but to maintain that the prosecution had not met its burden of showing he intended to commit theft when he broke and entered, an essential element for burglary. (§ 459.) Thus, at closing argument, defense counsel argued: "We're not disputing the fact that Mr. Carmony was inside the house. . . . What is disputed here is . . . state of mind . . . and we submit . . . that he did not have the . . . intent to steal when he was inside the Savini's [*sic*] home. If he was just inside the home, this is a trespass. It is still a crime. He still had no business being in their home. [¶] But without that . . . intent to steal, it is not a burglary." The defense called no witnesses, and the prosecution witnesses did not testify to having any knowledge of defendant's mental state. The only person who could have testified that he lacked the intent to commit theft or a felony when he entered the Savinis' house was defendant himself. In these circumstances, arguing that there was no defense evidence that would point to innocence constituted *Griffin* error, under the principle articulated in *Hughes*, *supra*, 27 Cal.4th 287, and *Bradford*, *supra*, 15 Cal.4th 1229.

In both *Hughes* and *Bradford*, the court found no *Griffin* error. In both cases, however, the high court relied on circumstances that do not exist here. In *Hughes*, *supra*,

6

27 Cal.4th 287, there were defense expert witnesses who testified on certain matters the prosecutor raised in closing argument (*id*. at p. 374), so any testimony by the defendant would not have been the sole focus of the prosecutor's remarks. Regarding other topics the prosecutor in *Hughes* addressed, "Under the defense theory of the case, defendant was in an unconscious state during the killing, and hence could not be expected to have provided answers to the prosecutor's questions, even had he taken the witness stand." (*Id*. at p. 373.) In *Bradford*, *supra*, 15 Cal.4th 1229, "the lack of evidence . . . might have been presented in the form of physical evidence or testimony other than that of defendant." (*Id*. at p. 1340, italics deleted.)

Although we find *Griffin* error, we find no due process violation and no prejudice under state law. Regarding due process, the comments did not render the trial fundamentally unfair. The jury was instructed, under CALCRIM No. 355, that a criminal defendant has "an absolute constitutional right not to testify." "Do not consider, for any reason at all, the fact the defendant did not testify. Do not discuss that fact during your deliberation or let it influence your decision in any way." And, of course, the jury was instructed, under CALCRIM No. 220, that defendant was presumed to be innocent and that the prosecution had to prove his guilt beyond a reasonable doubt. The instructions are presumed to have carried much more weight than the prosecutor's argument. " 'We presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Thornton* (2007) 41 Cal.4th 391, 441.) Regarding prejudice under state law, the prosecutor's remark is noteworthy for its very needlessness, because the prosecution's case was ironclad, given the physical evidence and the victims' testimony. There is no reasonable probability that, had the prosecutor not committed *Griffin* error, the outcome would have been more favorable to defendant. He is not entitled to relief.

As for defendant's general argument that the prosecutor's remarks shifted the burden to him to prove his innocence, we see no such implication in them, and reiterate that the jury was instructed that he was presumed innocent. (See *Bradford*, *supra*, 15 Cal.4th at p. 1340.) Even if the prosecutor's remarks could be said to contain a veiled reference to burden, there would be no constitutional due process violation or prejudice under state law. As stated, we view the applicable instructions as carrying greater weight than any untoward prosecutorial remarks.

### B. Claim of Mentioning a Matter Purportedly Outside the Record

Defendant next faults the prosecutor for telling the jury it should not consider Ms. Savini's absence and doing so in these terms: "you can't speculate why Kristin Savini was not called to testify in this case, whether she's available or unavailable three years later." Defense counsel objected to this remark as constituting testimony by the prosecutor. Defendant renews that contention on appeal.

The gravamen of the claim is that by referring to the witness's unavailability, the prosecutor was providing the jury with a mixed point of law and fact outside the record, i.e., that the witness was legally unavailable, and thus testifying, which counsel are not permitted to do.

We discern no misconduct. Reference to a matter of common knowledge is, as a rule, not misconduct, in the face of a claim that the prosecutor has introduced a matter outside the record. (See *People v. Tully* (2012) 54 Cal.4th 952, 1046; *People v. Dickey* (2005) 35 Cal.4th 884, 915.) The prosecutor advised the jury not to wonder why the witness was available or not available, and whether she was or wasn't available invoked only an axiomatic principle, not evidence that the jury did not hear. The claim is without merit.

#### DISPOSITION

The judgment is affirmed.

                                    _____

                                           RUSHING, P.J.

WE CONCUR:

_____

             PREMO, J.

_____

             ELIA, J.